Volterra, J.
Defendant James Ammons (“Ammons”) has moved this Court to terminate his probation. A hearing was held before this Court on this and two other defendant’s related motions on July 21, 1998. After considering defendants’ and the Commonwealth’s arguments and memoranda, defendant Ammons’s motion is ALLOWED.
BACKGROUND
On June 6, 1994, Ammons pleaded guilty to a charge of indecent assault and batteiy on a person over the age of fourteen in violation of G.L.c. 265, § 13H. Included in his sentence was a term of probation with a termination date of February 12, 1998. Ammons was on probation at the time of the effective date of the Act.[2] Aside from the Commonwealth’s contention that Ammons’s failure to submit a DNA sample is a violation of his probation, neither the Commonwealth nor the probation department assert that Ammons failed to comply with any of the other terms of his probation.
On September 30, 1997, the Massachusetts Legislature passed the DNA Seizure and Dissemination Act, codified as G.L.c. 22E (“the Act”). The Act established a state DNA database and requires that ”[a]ny person who is convicted of an offense under [various statutes] shall submit a DNA sample ... to the department within 90 days of such conviction." G.L.c. 22E, §3. Additionally, Section 8 of the inserting act provides that
Any person who is convicted of any offense listed in Section 3 of chapter 22E of the General Laws who is currently incarcerated in any prison or house of correction on the effective date of this act, notwithstanding the date of such conviction, shall submit a DNA sample to the department within 90 days of the effective date of this act or prior to release from custody, whichever first occurs. Any person currently on probation or parole as a result of a conviction or judicial determination resulting from a charge of any of the above listed offenses, notwithstanding of the date of such conviction or judicial determination, shall submit a DNA sample to the *31 department within 90 days of the effective date of this act.
St. 1997, c. 106, §8. The Act became effective on December 29, 1997, ninety days after which was March 29, 1998. The Act also allows the use of force to compel compliance with its terms, subjects those who do not comply with criminal sanctions and levies the cost of collection on those required to submit a DNA sample. DNA records are confidential except that they may be made available to law enforcement personnel as provided in the statute.
The State Police Department began collecting DNA samples in January 1998. On February 9, 1998 the Superior Court (Borenstein, J.) enjoined the collection of DNA samples. A single justice of the Appeals Court (Laurence, J.) modified tire injunction on March 26, 1998 and allowed the Commonwealth to resume collecting DNA samples. Justice Laurence’s decision allowed the Commonwealth to notify persons subject to the Act of their duty to provide a DNA sample and to inform them that a refusal to submit could subject them to the penalties set forth in Section 11 of the Act. Also under Justice Laurence’s decision, the Commonwealth is permitted to collect DNA samples but cannot use physical force to obtain the sample in the event that a person unequivocally and clearly refuses in writing to provide a DNA sample. On August 14, 1998, the Superior Court issued an opinion declaring the Act unconstitutional under the Fourth Amendment to the United States Constitution and under art. 14 of the Massachusetts Declaration of Rights.[3]
The Commonwealth initially notified probationers and parolees in early January 1998 that they must submit DNA samples. Ammons received this notification on January 22, 1998. Ammons returned the form entitled “acknowledgement of notification of duty to provide DNA sample” with his handwritten notations inserted in places in the text provided, which read:
I do not voluntarily consent to surrendering a sample of my DNA and I intend to explore seeking an injunction. I also do not understand that I must provide this DNA sample within 90 days of the conviction made on the above docket numbered Sec. 3 offense(s), as the conviction was entered several years prior to my receipt of this notice, but I do understand that I have a current obligation to submit to this procedure.
Ammons dated this form January 22, 1998.
DNA collection was enjoined between February 9, 1998 and March 26, 1998. The Commonwealth resumed the collection of samples in April 1998 and scheduled several days in April, June and July 1998 to do so. State Police Crime Laboratory employees attempted to telephone individuals who had scheduled appointments before the Superior Court injunction went into effect. Thousands of calls were made attempting to contact individuals to schedule new appointments on available dates in April, June and July 1998. There has been no evidence presented that the State Police either did or did not attempt to contact Ammons or the other defendants, or that any one of them ever received such a telephone call. On April 30, 1998, more than two months after his scheduled termination date, Ammons telephoned the State Police DNA number, 1-888-877-4DNA, to make an appointment. The person with whom Ammons spoke informed him that they were not scheduling any appointments and that he should await further notice.
Ammons filed the instant motion on May 28, 1998. Since at least March 12, 1998, however, Ammons’s attorney had been pursuing Ammons’s termination on his behalf. On March 12, 1998, Attorney Dohan, counsel for Ammons, telephoned the Suffolk County Probation Department to request that Ammons’s probation be terminated. The Probation Officer with whom Attorney Dohan spoke informed him that Ammons could not be terminated because he had not yet submitted a DNA sample. DNA collections were enjoined at that time.
The Commonwealth mailed additional written notices dated July 13, 1998 to probationers’ and parolees’ attorneys informing them that DNA samples would be collected on three days in July. On July 15, 1998 in Dorchester, July 23, 1998 in Fall River and July 29, 1998 in Danvers for four hours each day, the State Police were scheduling collections of DNA samples. Attorneys for the moving defendants replied to the Commonwealth by a letter dated July 16, 1998, which stated in part that Ammons, Harrison, and Miller
have all moved to terminate their probations on the grounds that the Commonwealth is without authority to seize their DNA after their probation periods were due to have expired and after March 29, 1998 when the 90-day collection period enacted by the Legislature expired. See St. 1997, c. 106, §8. In this regard, we note that the Commonwealth has initiated this attempt to collect DNA from these individuals only after the filing of their motions to terminate and presumably in anticipation of the hearings on their motions, currently scheduled for July 21, 1998. On advice of counsel, therefore, Mr. Ammons, Mr. Harrison, and Mr. Miller will not call the State Police to make appointments for the seizure of their DNA by the Commonwealth.
To date, none of the defendant have submitted DNA samples.
DISCUSSION
Generally, probationers who have complied with the terms of their probation will be “terminated” as a matter of course in a hearing before the court. The termination of probation is not obligatoiy and a judge has the authority to extend or revoke probation even after the probationary term has ended if the proba *32 tioner has violated the terms of his probation. See Commonwealth v. Sawicki, 369 Mass. 377 (1975). However, an extension or revocation of probation may only be based upon violations which occurred during the probationary term. Id.
Superior Court Rule 57 sets forth the process which must be followed in order for the court to terminate, extend or revoke probation. It provides in part:
At the end of a term of probation, the probation officer shall make a written report to the court of the result of probation, which shall be filed in the case, and, if the court shall order, the probation officer shall bring the defendant before the court for an extension of probation or for other disposition.
Superior Court Rule 57 (1998). The action required by probation officers is not discretionary: that is, he or she shall report to the court on the success or failure of each probationer. The court may, in its discretion, extend or alter probationary terms, but the Probation Department may not refuse to bring probationers before the court.
The first question this Court must answer is whether the Commonwealth, by way of or with the assistance of the Probation Department, may unilaterally refuse to terminate probationers from their terms of probation in order to seek their compliance with the Act. It may not. As noted above, the court is not bound to the terms of a particular defendant’s probation and may, for good reason, extend the term of probation. The Probation Department, on the other hand, may not do so, whether by inadvertence, policy or otherwise. Furthermore, the Commonwealth may not employ the Probation Department in order to circumvent the court’s role.
The second question before this Court is whether the Commonwealth may continue to seek DNA samples from these probationers after the expiration of the ninety day period following the effective date of the Act. Also, this Court must address whether, given that DNA samples were collected on only a handful of days, the failure of probationers to submit to DNA collection under these circumstances amounts to a “violation” of the Act, and thus, a violation of the terms of probation.[4]
Section 11 of G.L.c. 22E prescribes a criminal punishment for refusing to submit to DNA collection. It states that “(a]ny person required to provide a DNA sample pursuant to this chapter and who refuses to provide such DNA sample shall be subject to punishment by a fine of not more than $1,000 or imprisonment in a jail or a house of correction for not more than six months or both." The Act does not provide for an extension of probation in the event that a probationer, by fault or through no fault of his own, could not comply within the ninety days from the effective date of the Act. Instead, a failure to comply that constitutes a violation of probation should be dealt with through the normal course of probation revocation or extension through a hearing before the court, as would any violation of the law.
Here, Ammons and the other defendants attempted to comply with G.L.c. 22E. Defendants’ failure to conform to the terms of the Act cannot be construed as a “refusal.” Defendants, as those individuals provided for in Section 8 of the inserting act, could not have complied with the Collection of DNA within the ninety days following the effective date of the act. There was a window of approximately twenty-one days on which, in theory, defendants could have submitted samples. This Court cannot say with any certainty, however, that defendants actually could have submitted a sample on those days.[5] Furthermore, even if the Act provided for an extension of the time for compliance while these types of defendants are still on probation, which it does not, it is unclear whether the defendants could ever have complied given the sparse collection and recent decisions of the Superior Court. Although the State Police were collecting DNA samples on some days while defendants Harrison and Miller were still on probation, there is no evidence that they were ever notified of the collection locations, or if they were notified that it was in a sufficient amount of time to give them a meaningful opportunity to act. Furthermore, by the express terms of the Act, the instant defendants were only required to comply by March 29, 1998, which they could not do. Accordingly, defendants’ probations must be terminated.
As a final note, this Court would like to point out that it infers no animus or bad faith on the part of either the Commonwealth or the Probation Department. Both the Commonwealth and the Probation Department have made their best efforts to comply with the mandate given to them by the Legislature.
ORDER
For the foregoing reasons, defendant James Ammons’s Motion to Terminate Probation is hereby ALLOWED.

 Defendants Harrison and Miller were also on probation at the time of the effective date of the Act with scheduled termination dates of June 6, 1998 and April 17, 1998, respectively.

The constitutionality of the Act has no bearing on this Court’s decision.

In all criminal cases, probationers are subject to the requirements set forth in Superior Court Rule 56, which includes the requirement that the probationer “refrain from violating any law, statute, ordinance, by-law or regulation, the violation whereof is punishable.

Between January 22,1998, the date on which defendants received notice, through February 9, 1998, the date of the injunction, and March 26, 1998, the date of the Appeals Court’s modification, through March 9, 1998, ninety days after the effective date of the Act, there were twenty-one days on which the defendants, in theory, could have submitted samples. However, there were many days during this period on which DNA samples were not collected.